UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANUEL SHEARD, IV,

      Petitioner,                            Case No. 13-11681

v.

                                          HON AVERN COHN

PAUL KLEE,

      Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Manuel Sheard, IV, (Petitioner) is a state inmate at the Gus Harrison Correctional Facility in Adrian, Michigan. Petitioner is serving consecutive sentences of twenty five to fifty years following his convictions on four counts of first-degree criminal sexual conduct, in violation of M.C.L. § 750.520b. Petitioner has filed a petition for writ of habeas corpus through counsel claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that Petitioner's claims lack merit or are procedurally defaulted. For the reasons which follow, the petition will be denied. However, a certificate of appealability will be granted on Petitioner's prosecutorial misconduct and related ineffective assistance of counsel claim.

## II.  Procedural History

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. Petitioner filed an appeal of right to the Michigan Court of Appeals, which affirmed Petitioner's conviction and sentence.  People v. Sheard, No. 299084 (Mich.Ct.App. October 18, 2011).  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal of right before the Michigan Court of Appeals.  The Michigan Supreme Court denied Petitioner leave to appeal. People v. Sheard, 491 Mich. 909 (2012).

Petitioner has now filed a petition for writ of habeas corpus, presenting the following claims:

> I. Petitioner was denied his due process right to a fair trial by the prosecutor's misconduct and was denied effective assistance of counsel.
>
> II. The trial court reversibly erred in sustaining the prosecutor's objection to the statement of the complaining witness when it was admissible under the excited utterance exception to the hearsay rule.

## III.  Facts

The material facts leading to Petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 10, 413 (6th Cir. 2009):

> Defendant's charges arise from evidence that he sexually assaulted his daughter, who was nine at the time of his trial.  She testified that the incidents began in August 2007 and continued until June 2009.  She gave compelling testimony about the nature and extent of the abuse and stated that the abuse ended only after she told her aunt about it.  There was also expert medical testimony that the child had injuries to her genital area including a healed scar on the perineum, which had been sutured in a previous medical visit, as

2

well as a transection of the hymen, which had not completely healed.  The physician testified that, although the transected hymen could be the result of a single penetration, it was "more of a sign of potentially repeated penetration."  This is because there was "no healing of that area.  It left it in two pieces that never joined together."

Defendant's theory of the case was that his daughter's physical injuries were caused by a bicycle accident and that her allegations of abuse were inconsistent and contrived.

After hearing the evidence, the jury found defendant guilty on all four counts.

People v. Sheard, No. 299084, at * 1.

IV.  Analysis

A.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim

that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

3

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the

4

AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.  Finally, in reviewing Petitioner's claims, a district court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953).

### B.  Petitioner's Claims

#### 1.  Prosecutorial Misconduct and Ineffective Assistance of Counsel

Petitioner claims that the prosecutor committed misconduct by introducing improper character evidence that Petitioner had engaged in an extramarital affair and by his repeated references to this evidence in his opening and closing arguments. Petitioner further contends that his trial counsel was ineffective for failing to object to the misconduct.

5

Respondent argues that Petitioner's prosecutorial misconduct claim is procedurally defaulted because he failed to object to the prosecutor's questions and arguments at trial.  Petitioner says that his trial counsel was ineffective for failing to object to the misconduct and therefore the claim is not defaulted.

Ineffective assistance of counsel may establish cause for procedural default. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of the claim. See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

As to the merits of Petitioner's claim, the Michigan Court of Appeals agreed that the prosecutor's questions and arguments about Petitioner's extramarital affair were improper but concluded that the error was harmless.  The court of appeals explained:

> Here, defendant's daughter presented very compelling testimony about repeated sexual abuse.  Further, there was medical testimony that the injuries to her vagina were consistent with having been repeatedly penetrated.  Expert witnesses also opined that the injuries were not consistent with a bicycle injury, as defendant would have the jury believe. Given the overwhelming weight of the testimony and physical evidence, we conclude that the prosecutor's misconduct—although quite serious and completely unnecessary given the proofs—did not prejudice defendant.  And, for that reason, it did not amount to plain error warranting a new trial.  For the same reason, we cannot conclude that, but for defendant's lawyer's failure to object to this misconduct, there was a reasonable probability that the outcome would have been different.

Sheard, Slip. Op. at * 3 (internal citation omitted).

Here, because Respondent does not argue that that there was a proper basis for the prosecutor's questions and arguments about Petitioner's extramarital affair and the Michigan Court of Appeals acknowledged that the prosecutor's conduct was improper, it

6

is appropriate to proceed to a harmless error analysis of Petitioner's prosecutorial misconduct claim.  See Dittrich v. Woods, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009); aff'd in part and rev'd in part on other grds, 419 F. App'x. 573 (6th Cir. 2011)

In Mitchell v. Esparza, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court held that habeas relief would be appropriate only if a habeas Petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner." However, in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  "Citing concerns about finality, comity, and federalism," the Supreme Court in Brecht "rejected the Chapman standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions."  Fry v. Pliler, 551 U.S. 112, 116 (2007)(citing Kotteakos v. United States, 328 U.S. 750 (1946)).  Thus, Brecht's more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state court conviction regardless of whether the state courts engaged in a harmless error analysis of the Petitioner's claims.  Fry, 551 U.S. at 121-22.

In the aftermath of Fry, the Court of Appeals for the Sixth Circuit has concluded that the Brecht standard should be applied to determine whether an error was harmless and that it is not necessary for a habeas court to ask whether the state court unreasonably applied the Chapman harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict.

7

Ruelas v. Wolfenbarger, 580 F. 3d 403, 412 (6ᵗʰ Cir. 2009); Wilson v. Mitchell, 498 F. 3d
491, 503 (6ᵗʰ Cir. 2007); Vasquez v. Jones, 496 F. 3d 564, 575 (6ᵗʰ Cir. 2007).  The
Sixth Circuit has observed that in light of the Supreme Court's holding in Fry, "a federal
habeas court is never required to determine whether a state court's harmless error
determination was 'unreasonable'— Brecht handles the work on this, too." Ruelas, 580
F. 3d at 412.  However, although noting in Ruelas that the Supreme Court's holding in
Fry "subsumes" the holding in Esparza, the Sixth Circuit further observed the Supreme
Court did not overrule Esparza. Id. at 413.  Thus, a federal court on habeas review of a
state court decision remains free to determine whether the state court's Chapman
harmless error analysis was reasonable.  If it was, than the claim should be denied. Id.
However, a federal court is also free to proceed directly to use the Brecht test to
determine whether the error was harmless. Id.

Here, the Michigan Court of Appeals found that the prosecutorial misconduct in
this case was harmless.  The court of appeals did not unreasonably apply the Chapman
harmless error test in rejecting Petitioner's claim, See e.g. Miller v. Colson, 694 F. 3d
691, 700-01 (6ᵗʰ Cir. 2012), nor can Petitioner satisfy the Brecht test and show that this
misconduct had a substantial and injurious effect or influence on the jury verdict.  The
victim offered extensive and detailed testimony about the repeated sexual assaults.
The treating physician, who was qualified as a medical expert, testified that the victim's
hymen had been completely cut in two and that such an injury would have required
some sort of penetrating injury.  The doctor also testified that he believed that the injury
to the victim's hymen had been caused by repeated penetrations due to the fact that it

8

had not healed.  Expert witnesses also rejected the idea that such an injury could have

come from a bicycle injury, as Petitioner suggested.

In light of the overwhelming evidence of guilt, the Michigan Court of Appeals'

conclusion that the admission of "prior bad acts" evidence of Petitioner's marital

infidelity was harmless error at most was not an unreasonable application of clearly

established law so as to entitle Petitioner to habeas relief.  Stated differently, when

"[V]iewed through the deferential lens of AEDPA, the state court's harmlessness ruling

must stand" because based on the record in this case, the Michigan Court of Appeals

reasonably rejected the prosecutorial misconduct claim as harmless error.  Kennedy v.

Warren, 428 Fed. Appx. 517, 522, 523 (6th Cir. 2011).  Moreover, because the Michigan

Court of Appeals's harmless error analysis was reasonable, Petitioner cannot establish

that the prosecutor's conduct had a substantial and injurious effect or influence on the

jury verdict, so as to satisfy the stricter Brecht harmless error test.

As to Petitioner's claim that trial counsel was ineffective for failing to object to the

prosecutorial misconduct, Petitioner must demonstrate that, considering all of the

circumstances, counsel's performance was so deficient that the attorney was not

functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v.

Washington, 466 U.S. 668, 687 (1984).  In so doing, Petitioner must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance.  Id.   Second, Petitioner must show that such performance

prejudiced his defense. Id.  To demonstrate prejudice, Petitioner must show that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland, 466 U.S. at 694.  "Strickland's test

for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011)(quoting Harrington, 131 S. Ct. at 792).

Significantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Under § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner.  Id.   This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."Harrington, 131 S. Ct. at 785.  "Surmounting Strickland's high bar is never an easy task." Id. at 788 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).

As explained above, the prosecutor's conduct, while improper, did not have a substantial and injurious effect on the jury verdict, as required by Brecht to obtain habeas relief.  "The prejudice prong of the ineffective assistance analysis subsumes the Brecht harmless-error review."  Hall v. Vasbinder, 563 F.3d 222, 236 (6th Cir. 2009). Because the prosecutor's conduct was harmless error, Petitioner cannot show that he was prejudiced in order to prevail on his ineffective assistance of counsel claim.  See e.g. Bell v. Hurley, 97 Fed. Appx. 11, 17 (6th Cir. 2004).  Moreover, applying the AEDPA's deferential standard, the Michigan Court of Appeals' determination that Petitioner was not prejudiced by the admission of this "prior bad acts" evidence

10

concerning his marital infidelity in light of the compelling evidence of guilt was not an unreasonable application of Strickland. See Schoenberger v. Russell, 290 F. 3d 831, 836-37 (6th Cir. 2002); See also Dittrich v. Woods. 419 Fed. Appx. 573, 576-78 (6th Cir. 2011).

Overall, Petitioner is not entitled to habeas relief on this claim.

## 2. Evidentiary Claim

Petitioner next claims that the trial court erred in excluding a hearsay statement from the victim that Petitioner says should have been admissible as an excited utterance. Defense counsel attempted to bring in a statement made by the victim through defense witness Kierian Enciso, in which Enciso allegedly heard the victim say "you guys lied, you liars" after testifying at the preliminary examination. The victim purportedly made these remarks after being informed she could not leave with her mother, even though she had been told that if she testified, as requested, she could go home with her mother. The prosecutor objected to the admission of the statement as hearsay. Defense counsel argued that the victim's statement qualified as an excited utterance. Defense counsel attempted to lay a foundation for admission of the statement as an excited utterance. After hearing argument from counsel, the trial court sustained the prosecutor's objection.

The Michigan Court of Appeals rejected Petitioner's claim as follows:

The trial court did not abuse its discretion in sustaining the objection. Defense counsel did not lay a sufficient foundation to justify admission of the statement as an excited utterance. Further, even if the trial court had admitted the statement, it would not have aided defendant. Defendant's daughter allegedly made the statement in response to not being allowed to leave with her mother. What prompted her to say those things is also hearsay and inadmissible. Without the context that tended to suggest that

11

       she had a motive to fabricate testimony, the statement could not have aided
       defendant's theory of the case.  Therefore, the trial court's decision to sustain
       the objection could not have prejudiced defendant.

Sheard, Slip. Op. at * 5 (internal citation omitted).

       To the extent that Petitioner contends that the trial court erred in determining that

the victim's statement did not qualify as an excited utterance, this is not a basis for

habeas relief.  It is "not the province of a federal habeas court to reexamine state-court

determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Thus, errors in the application of state law, especially rulings regarding the admissibility

of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker,

224 F. 3d 542, 552 (6th Cir. 2000).  What is or is not hearsay evidence in a state court

trial is governed by state law. See Johnson v. Renico, 314 F. Supp. 2d 700, 705 (E.D.

Mich. 2004)(internal citations omitted).  Petitioner's claim that the trial court erred in

determining that the victim's statement did not qualify for admission under the excited

utterance exception to the hearsay rule presents a state evidentiary law issue which is

not cognizable on federal habeas review.  See e.g. Smith v. Jones, 326 Fed. Appx. 324,

330 (6th Cir. 2009)

       To the extent that Petitioner contends that the exclusion of this statement

violated his right to present a defense, he is also not entitled to relief.  Just as an

accused has the right to confront the prosecution's witnesses for the purpose of

challenging their testimony, he also has the right to present his own witnesses to

establish a defense.  This right is a fundamental element of the due process of law.

Washington v. Texas, 388 U.S. 14, 19 (1967); See also Crane v. Kentucky, 476 U.S.

683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth

Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth

Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity

to present a complete defense'")(internal citations omitted).  However, an accused in a

criminal case does not have an unfettered right to offer evidence that is incompetent,

privileged, or otherwise inadmissible under the standard rules of evidence. Montana v.

Egelhoff, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its

"traditional reluctance to impose constitutional constraints on ordinary evidentiary

rulings by state trial courts." Crane, 476 U.S. at 689.  The Supreme Court gives trial

court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or

that poses a risk of harassment, prejudice, or confusion of the issues. Id. (quoting

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  Finally, rules that exclude

evidence from criminal trials do not violate the right to present a defense unless they are

"'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" United

States v. Scheffer, 523 U.S. 303, 308 (1998)(quoting Rock v. Arkansas, 483 U.S. 44, 56

(1987)).

Here, although the trial court excluded the victim's statement to Enciso, Petitioner

was nonetheless permitted to present evidence and testimony in support of his claim

that the victim had falsely accused him of sexually assaulting her.  Defense counsel

elicited testimony from Petitioner's mother and sister that the victim had told them that

she had lied.  Defense counsel was also permitted to play a audiotape made by another

attorney in which the victim admitted that she had made a false statement to the police.

The trial court's exclusion of the victim's statement "you guys lied, you liars" was not so

egregious that it effectively denied Petitioner a fair trial, in light of the fact that Petitioner

was not completely barred from presenting testimony that the victim had fabricated her

story.  With the quantum of evidence on the defense theory in the record, this Court

concludes that the Petitioner was afforded "a meaningful opportunity to present a

complete defense." Allen v. Howes, 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing

Crane, 476 U.S. at 690 (citation and internal quotations omitted)).  Petitioner is therefore

not entitled to habeas relief on this claim.

## V.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did

not result in decisions that were contrary to Supreme Court precedent, an unreasonable

application of Supreme Court precedent, or an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is **DENIED.**  This case is

DISMISSED.

## VI.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted.[1]  A certificate should issue if Petitioner has

demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  Slack v. McDaniel, 529 U.S. 473 (2000).

---

[1]  "The district court must issue or deny a certificate of appealability when it
enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule
11(a), 28 U.S.C. foll. § 2254.

The Court finds that reasonable jurists could debate the whether Petitioner's prosecutorial misconduct claim and related ineffective assistance of counsel claim deserves encouragement to proceed further.  The Court therefore **GRANTS** a certificate of appealability on these claims under 28 U.S.C. § 2253(c)(2). See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  However, the Court finds that reasonable jurists would not debate the Court's assessment of Petitioner's evidentiary claim; therefore, Petitioner is not entitled to a certificate of appealability on this claim.

    **SO ORDERED.**

           S/Avern Cohn                 
           AVERN COHN
           UNITED STATES DISTRICT JUDGE

Dated:  June 9, 2015
        Detroit, MI

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 9, 2015, by electronic and/or ordinary mail.

           S/Sakne Chami          
           Case Manager, (313) 234-5160